## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CRAIG BIENKOWSKI,       :     Civil No.  4:24-CV-1714
                             :
       **Plaintiff**         :
                             :
       **v.**                :     **(Magistrate Judge Carlson)**
                             :
**FRANK BISIGNANO,**[1]      :
**Commissioner of Social Security,**     :
                             :
       **Defendant.**      :

## MEMORANDUM OPINION

### I.    Introduction

Visual acuity and the ability to lift and carry objects are often essential employment attributes. Therefore, when an individual's visual impairments and ability to lift and carry are at issue in a Social Security appeal, it is incumbent upon the Administrative Law Judge (ALJ) hearing this disability claim to provide a logical bridge between the evidence and the ALJ's legal conclusions and factual findings, a logical nexus which addresses these conditions and explains how they do not

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

preclude employment. When this logical nexus is uncertain or absent, a remand for further development of the record is often required.

We are reminded of this familiar principle in the instant case. In this case, an ALJ found that the plaintiff, Craig Bienkowski, was not disabled and was capable of performing medium exertional work without any visual limitations. However, in reaching this conclusion, it appears that the ALJ may have misstated the evidence relating to Bienkowski's ability to lift and carry. The ALJ's decision suggested that state agency experts and a consulting examining source all agreed that Bienkowski could perform medium exertional work; however, we do not read the consulting examining source opinion as reaching this conclusion. Rather, that opinion—the only opinion from a source who actually examined the plaintiff—indicates some greater degree of physical limitations on Bienkowski's part.

Likewise, in our view the ALJ's treatment of Bienkowski's visual impairments  does not provide a complete logical bridge for the decision denying benefits to the plaintiff. In this case it is undisputed that Bienkowski suffered from a visual impairment, snow vision syndrome. Both Bienkowski's treating physician and an examining source indicated that this condition effected and limited his ability to work, and the ALJ found that this condition was a severe impairment. However,

the residual functional capacity assessment made by the ALJ in this case contained no visual limitations.

While we regard this as a somewhat close case, considered in combination we believe that these two issues cast sufficient doubt over whether the requisite logical nexus exists between the evidence and the ALJ's ultimate legal conclusions that a remand is appropriate here. Therefore, we will order this case remanded for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

### A. Introduction

On January 11, 2022, Craig Bienkowski filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 17, 202.1 (Tr. 11). In this application Bienkowski alleged that he was disabled due to an array of impairments, including Degenerative Disc Disease of the Cervical, Thoracic, and Lumbar Spine; Migraine; Visual Disorder including Snow Vision Syndrome; Major Depressive Disorder; Generalized Anxiety Disorder; and posttraumatic stress disorder. (Tr. 14). Bienkowski was born on July 18, 1977 and was 43 years old at the time of the alleged onset of his disability, making him a younger worker under the Commissioner's regulations. (Tr. 24). He had at least a high school education and prior employment in the corrections field. (Id.)

B. **Bienkowski's Visual Impairments, and the Expert Opinions Regarding His Ability to Perform Medium Work.**

As we have noted questions regarding the plaintiff's visual acuity and his ability to perform medium exertional work lie at the heart of this appeal. With respect to these two issues, the record reveals that it is undisputed that Bienkowski has a visual impairment, snow vision syndrome.[2] In this regard, the clinical record is replete with references to this diagnosis in Bienkowski's case.[3] Moreover, the clinical record contains notations indicating that these visual impairments had a substantial impact upon Bienkowski's ability to function in the workplace.

This was a longstanding condition which was noted by caregivers as early as April 2020. (Tr. 383). According to counseling notes from September of 2020, this condition was exacerbated by reading: " If he reads or looks at anything for very long the snow vision gets worse." (Tr. 519). In November of 2020, Bienkowski reported that; "he can only look at the computer or a paper for about 5 minutes before the 'snow' gets so bad he cannot see what is before him." (Tr. 527). By December

---

[2] According to the National Institute of Health (NIH): "Visual snow syndrome (VSS) is a disorder characterized by persistent visual disturbances, including the visual snow phenomenon,. . . ."

[3] Tr. 322, 323, 327, 331, 345, 349, 350, 351, 352, 356, 361, 365, 371, 374, 377, 379, 383, 385, 411, 519, 527, 572, 631, 645, 646, 647, 650, 697, 700, 703, 725, 727.

of 2020, Bienkowski's visual snow syndrome and accompanying migraine headaches were described as chronic disorders. (Tr. 371).

In February of 2021, Bienkowski reported a flare up and exacerbation of this condition. (Tr. 368-69). By March of 2021, it was noted that Bienkowski's visual snow syndrome had worsened. (Tr. 365). Treatment notes from March and August of 2021 also associated this condition with Bienkowski's reported migraines. (Tr. 352, 365). Moreover, clinical notes from September 13, 2021 indicated that this condition significantly impaired the plaintiff's activities of daily living. (Tr. 349). Treatment records from November 2021 also indicated that this condition interfered with Bienkowski's ability to find work since Bienkowski "admit[ed] he has applied for some part time positions, but no one will hire him because of his sight issues.(Visual Snow Syndrome)." (Tr. 572).

By May of 2022, treating caregivers reported that:

> He continues to deal with baseline visual snow syndrome with periodic, intermittent and random exacerbations which can last days to months. During acute flare ups, he is extremely limited with his ability to drive at all, look at computer screens for any length of time, be in bright lights or out in sun for any period of time.

(Tr. 647). In June of 2022, Bienkowski reported a flare up of this syndrome. (Tr. 646). By July 2022, this condition was described as "constant." (Id.) Bienkowski's condition was characterized by his physician in the following terms in October of

2022: "He continues to deal with debilitating symptoms secondary to refractory visual snow syndrome." (Tr. 700).

These medical records detailing the impact of Bienkowski's snow vision syndrome upon his ability to work were entirely consistent with the plaintiff's own reports as well as the third party statement submitted in this case. In a vision questionnaire  completed by Tasha Piccarreta in February of 2022 on behalf of Bienkowski, it was explained that the plaintiff's snow vision interfered with his peripheral vision, as well as his ability to read, drive or perform his work as a correctional officer. (Tr. 228).

The medical opinion evidence provided by every source who treated or examined Bienkowski also corroborated that this condition effected Bienkowski's ability to work on a sustained basis.   In January of 2021 and again in December of 2023, Bienkowski's treating physician, Dr. Jon Oleginski, opined that these impairments were disabling. (Tr. 31-32, 416-17). According to the doctor Bienkowski suffered from "significant visual impairments with limited ability to drive or ambulate/navigate quickly." (Tr. 31). The doctor also expressly found that:

> The cumulative effects of all medical co-morbidities in my opinion and to a reasonable degree of medical certainty deem [Bienkowski] completely and indefinitely incapacitated from any meaningful, safe or productive employment.

(Tr. 31, 417).

6

These findings were confirmed, in part, by a consulting, examining source Dr. David Evans. On May 20, 2022, Dr. Evans reported that Bienkowski's visual acuity symptoms were "chronic and debilitating." (Tr. 603). According to Dr. Evans Bienkowski could only read or use a computer for short periods, his vision fluctuated due to this syndrome, and all of his visual activities were affected to some degree by this neurological condition. (Tr. 601, 603).

A second examining, consulting source, CRNP Tara Cynwinski, also confirmed this diagnosis of snow vision syndrome in a June 3, 2022 report. (Tr. 606-16). CRNP Cynwinski went on to document a separate limitation on Bienkowski's ability to work, finding that he could frequently lift and carry up to ten pounds, but only occasionally lift or carry objects weighing between eleven and fifty pounds, and could never lift or carry more than fifty pounds. (Tr. 611). This finding precluded Bienkowski from performing a full range of medium exertional labor since medium work "involves lifting no more than 50 pounds at a time with *frequent lifting or carrying of objects weighing up to 25 pounds."* 20 C.F.R. § 220.132. By confining Bienkowski to only occasional lifting of objects weighting between eleven and twenty five pounds, CRNP Cynwinski essentially found that he could not meet all of the exertional requirements of medium work and confined him to some form of light work.

7

The only countervailing opinions came from two non-treating, non-examining sources. In July of 2022, Dr. Baublitz-Breneburg conducted an initial disability determination based upon a review of Bienkowski's medical records. (Tr. 89-99). In that initial determination, the doctor found that the plaintiff could perform medium work; that is, frequently lifts or carry upon to twenty five pounds and occasionally life or carry up to fifty pounds.  (Tr. 94). Dr. Baublitz-Breneburg also stated that Bienkowski experienced no visual limitations. (Tr. 95). Upon reconsideration in November of 2022, a second non-examining state agency source, Dr. Cuozzo, reached similar conclusion, stating that Bienkowski could frequently life and carry up to twenty five pound and suffered from no visual limitations. (Tr. 106-07).

## C. **The ALJ Hearing and Decision**

It was against this equivocal medical backdrop that Bienkowski's disability claim came to be heard by the ALJ on August 4, 2023. (Tr. 36-63). Bienkowski and a Vocational Expert both testified at this hearing. (Id.) In his testimony, Bienkowski stated that he could lift no more than twenty pounds, and constantly exereinced snow vision symptoms which fluctuated in their severity but affected his mobility. (Tr. 45, 51). Thus, Bienkowski's testimony corroborated the medical evidence which limited him to light work and indicated that his snow vision syndrome impaired his ability to work. The Vocational Expert, in turn, testified that Bienkowski could perform

certain medium exertional jobs without visual limitations. (Tr. 59). However, when the hypothetical was altered to include only light work with off-task time due to visual impairments, migraines or emotional conditions, the Vocational Expert testified that there was no employment available for Bienkowski. (Tr. 60).

Following this hearing, on December 14, 2023, the ALJ issued a decision denying Bienkowski's application for benefits. (Tr. 8-30). In that decision, the ALJ first concluded that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2025 and had not engaged in substantial gainful activity since March 20, 2021, his amended alleged onset date. (Tr. 13). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Bienkowski had the following constellation of severe impairments: Spine Disorder including Degenerative Disc Disease of the Cervical, Thoracic, and Lumbar Spine; Migraine; Visual Disorder including Snow Vision Syndrome; Major Depressive Disorder; Generalized Anxiety Disorder; and posttraumatic stress disorder. (Tr. 14). At Step 3, the ALJ determined that these impairments did not meet or medically equal the severity of any listed impairments. (Tr. 14-18).

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering the plaintiff's limitations from his impairments, stating that:

> After careful consideration of the entire record, the undersigned finds
> that the claimant has the residual functional capacity to perform

medium work as defined in 20 CFR 404.1567(c) except the claimant is limited to occupations that require no more than frequent postural maneuvers, such as balancing, stooping, kneeling, crawling, crouching, and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes, and scaffolds. The claimant must avoid frequent concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, excessive noise and vibration, and extreme dampness and humidity. He must avoid frequent exposure to dangerous machinery and unprotected heights. He is limited to occupations requiring no more than simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work-place changes and occupations which require no more than frequent interaction with supervisors and coworkers and no more than occasional interaction with members of the general public.

(Tr. 18).

In making the RFC determination, the ALJ's decision was problematic in two respects. First, it erroneously suggested that there was a medical consensus that Bienkowski could perform medium work and specifically found that the consulting examining source, CRNP Cynwinski, stating that the: "physical consultative examiner opined the claimant is able to perform medium exertion work." (Tr. 21). The ALJ's decision did not reconcile this conclusion with CRNP Cynwinski's actual determination which limited Bienkowski to only occasional lifting of objects weighting between eleven and twenty five pounds, a finding that precluded meeting all of the exertional requirements of medium work and confined him to some form of light work.

Likewise, the ALJ found that Bienkowski's snow vision syndrome was a severe impairment, but rejected all of the opinions of medical sources that actual examined or treated the plaintiff, who consistently stated that  this syndrome limited his ability to work. Instead, the ALJ adopted the opinions of the non-examining sources and found that Bienkowski faced no visual limitations.

Having made these findings, the ALJ concluded that Bienkowski could not return to his past work but could perform other medium exertional work in the national economy. (Tr. 24-25). Accordingly, the ALJ concluded that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Bienkowski contends first that the ALJ erred in suggesting that all medical experts agreed that Bienkowski could perform medium exertional work when CRNP Cynwinski's opinion limited him to less than a full range of medium work and was more consistent with light work. In addition, Bienkowski asserts that the ALJ erred in failing to consider any visual limitations in Bienkowski's case given the clinical and expert opinion evidence which indicated that his snow vision syndrome imposed some limitations on his workplace function. Taken together, we agree that these two shortcomings in the analysis of this case mean that the essential factual, legal and logical bridge between

11

the evidence and the ALJ's findings is lacking. Therefore, we will remand this case

for further consideration by the Commissioner.

## III.    <u>Discussion</u>

### A.    <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's

application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the

record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200

(3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012).

Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla.

<u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a

conflict created by the evidence. <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir.

1993). But in an adequately developed factual record, substantial evidence may be

"something less than the weight of the evidence, and the possibility of drawing two

inconsistent conclusions from the evidence does not prevent [the ALJ's decision]

from being supported by substantial evidence." <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." <u>Leslie v. Barnhart</u>, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. <u>T-Mobile South, LLC v. Roswell</u>, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." <u>Ibid</u>.; <u>see, e.g., Perales</u>, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison</u>, 305 U.S. at 229, 59 S.Ct. 206. <u>See Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

<u>Biestek</u>, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application

of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In <u>Burnett</u>, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. <u>Id</u>. at 120; <u>see Jones v. Barnhart</u>, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." <u>Jones</u>, 364 F.3d at 505.

<u>Diaz v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B. <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); <u>see also</u> 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.  42

U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R.

§404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that

determination entails an assessment of what work the claimant can do given the

physical limitations that the claimant experiences. Yet, when considering the role

and necessity of medical opinion evidence in making this determination, courts have

followed several different paths. Some courts emphasize the importance of medical

opinion support for an RFC determination and have suggested that "[r]arely can a

decision be made regarding a claimant's residual functional capacity without an

assessment from a physician regarding the functional abilities of the claimant."

Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013)

(quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa.

Mar. 4, 2013)). In other instances, it has been held that: "There is no legal

requirement that a physician have made the particular findings that an ALJ adopts

in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11

(3d Cir. 2006). Further, courts have held in cases where there is no evidence of any

credible medical opinion supporting a claimant's allegations of disability that "the

proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

18

it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also Metzger v. Berryhill,</u> No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

19

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

### C. **This Case Will Be Remanded.**

As we have noted, as part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings. In our view, in the instant case, that legal and logical bridge is lacking in two respects. First, the ALJ's decision erroneously suggested that there was a medical consensus that Bienkowski could perform medium work and specifically found that the consulting examining source, CRNP Cynwinski, stating that the: "physical consultative examiner opined the claimant is able to perform medium exertion work." (Tr. 21). However, CRNP Cynwinski's examination report actually limited Bienkowski to only occasional lifting of objects weighting between eleven and twenty five pounds, a finding that precluded meeting all of the exertional requirements of medium work and confined him instead to some form of light work. The ALJ's decision does not acknowledge this fact; and the failure to recognize this

divergence of medical opinion is potentially prejudicial since the Vocational Expert's testimony cast doubt upon Bienkowski's ability to perform light work if he suffered from impairments which took him off task, like migraines and snow vision syndrome. (Tr. 60). The potential prejudice stemming from this oversight was further heightened by the fact, that the ALJ expressly concluded only that there were medium exertional jobs available to the plaintiff. (Tr. 24-25).

Further, in our view, the ALJ's decision to refrain from including any visual limitations in the RFC in this case cannot be reconciled with the clinical evidence, Bienkowski's self-reported limitations, or the medical opinions of treating and examining sources.  This body of mutually consistent and persuasive evidence indicated that, at a minimum, Bienkowski experienced some degree of limitations due to his loss of visual acuity. Therefore, substantial evidence simply does not support the decision to factor no visual limitations whatsoever into Bienkowski's RFC.

Simply put, taken in combination these two shortcomings undermine the essential logical bridge between the evidence and the ALJ's disability conclusion which is necessary in this case. Therefore, more is needed by way of an explanation to support this decision.  Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the

Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

## IV.    **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: June 12, 2025